**No. 25-03203**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

VALERIE TORRES and RHONDA HYMAN, individually and on behalf of all others similarly situated,

*Appellants-Plaintiffs*,

v.

PRUDENTIAL FINANCIAL, INC., ACTIVEPROSPECT, INC., and ASSURANCE IQ, LLC,

*Appellees-Defendants*.

Appeal From an Order Granting Summary Judgment Entered by the United States District Court for the Northern District of California

The Honorable Charles R. Breyer, Senior District Judge
Case No. 22-cv-07465

# APPELLANTS' REPLY BRIEF

Dena C. Sharp
dsharp@girardsharp.com
Simon S. Grille
sgrille@girardsharp.com
Trevor T. Tan
ttan@girardsharp.com
Nina R. Gliozzo
ngliozzo@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

*Counsel for Appellants-Plaintiffs*

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................3

I. ActiveProspect Attempted to Read or to Learn the Contents of Plaintiffs' Communications by Intercepting Them. ........................................3

A. Requiring Contemporaneous Understanding Ignores the Plain Text and the Meaning of "Attempt." ..................................................3

B. None of the Statutory Canons Defendants Cite Support Their Narrow Reading of Section 631(a). ..................................................5

C. The Court Should Reject Defendants' Cramped Understanding of Privacy. ......................................................................................11

D. The District Court's Interpretation Conflicts with California Courts' Understanding of CIPA. .......................................................12

E. Federal Courts Have Not Required Contemporaneous Understanding. ..........................................................................14

F. The Rule of Lenity Does Not Apply to Section 631. ..........................16

II. Whether ActiveProspect Read or Attempted to Read or to Learn the Contents of Plaintiffs' Messages Turns on Disputed Facts. ..........................19

A. ActiveProspect's Attempt to Read Occurred While Plaintiffs' Communications Were In Transit or Being Sent or Received. ...........20

B. ActiveProspect Can Decipher the Contents of Plaintiffs' Communications. ..........................................................................21

III. The District Court Correctly Concluded that ActiveProspect Is a Third-Party Eavesdropper. ..........................................................................24

A. The "Capability to Use" Test is Grounded in the Statutory Text. ......24

B. ActiveProspect is Capable of Using the Information it Intercepted. ....27

IV. Summary Judgment Should Also Be Reversed as to Prudential and Assurance. ....30

CONCLUSION ....30

CERTIFICATE OF SERVICE ....31

CERTIFICATE OF COMPLIANCE ....32

## TABLE OF AUTHORITIES

**Cases**

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .......... 28

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 4

*Doe v. Eating Recovery Ctr., LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 9, 18

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 11

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 12, 18

*Forest E. Olson, Inc. v. Superior Ct.*,
63 Cal. App. 3d 188 (1976) .......... 8

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 28

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 25

*Gutierrez v. Converse Inc. ("Gutierrez I")*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) .......... 14

*Gutierrez v. Converse Inc. ("Gutierrez II")*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 15

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 11

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) .......... 10

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 17

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 25, 27

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 9, 12, 27

*Kirtsaeng v. John Wiley & Sons, Inc.*,
568 U.S. 519 (2013) ....................................................................................7

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ....................................................16

*Mikulsky v. Bloomingdale's LLC*,
2024 WL 3091395 (S.D. Cal. May 14, 2024)....................................................16

*Mikulsky v. Bloomingdale's, LLC*,
2025 WL 1718225 (9th Cir. June 20, 2025) ....................................................15

*People v. Cain*,
10 Cal. 4th 1 (1995)..........................................................................................5

*People v. Conklin*,
12 Cal. 3d 259 (1974).......................................................................................12

*People v. Guzman*,
11 Cal. App. 5th 184 (2017), *aff'd*, 8 Cal. 5th 673 (2019)............................. 9, 10

*People v. Manzo*,
53 Cal. 4th 880 (2012)......................................................................................16

*People v. Moses*,
10 Cal. 5th 893 (2020)........................................................................................4

*People v. Otto,*
2 Cal. 4th 1088 (1992)........................................................................................5

*People v. Ratekin*,
212 Cal. App. 3d 1165 (1989)............................................................... 5, 9, 10

*People v. Suite*,
101 Cal. App. 3d 680 (1980)............................................................................13

*People v. Superior Ct. (Decker)*,
41 Cal. 4th 1 (2007)........................................................................................4, 5

*People v. Superior Ct.*,
6 Cal. 5th 457 (2018)..........................................................................................7

*People v. Watkins*,
55 Cal. 4th 999 (2012)........................................................................................5

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................................. 20, 22

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....................................... 2, 7, 10, 11, 12, 20, 23, 24, 26, 29

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 13, 24

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .......... 12, 18

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 10

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .......... 25, 28

*Tellez v. Superior Ct.*,
56 Cal. App. 5th 439 (2020) .......... 7

*Thomas v. Papa John's Int'l, Inc*,
2025 WL 1704437 (9th Cir. June 18, 2025) .......... 15

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 25

*United States v. Metcalf*,
2025 WL 2699997 (9th Cir. Sept. 23, 2025) .......... 17

*United States v. Patrick*,
6 F. Supp. 2d 51 (D. Mass. 1998) .......... 23

*United States v. Saavedra-Velazquez*,
578 F.3d 1103 (9th Cir. 2009) .......... 4

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 26

*Warden v. Kahn*,
99 Cal.App.3d 805 (1979) .......... 13, 17

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 14

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 27

**Statutes**

Cal. Pen. Code § 631(a) .......... 1, 3, 6, 8, 9, 11, 13, 16, 17, 20, 24

Cal. Pen. Code § 632 .......... 9, 11

Cal. Pen. Code § 633 .......... 8

Cal. Pen. Code § 633.5 .......... 8

## INTRODUCTION

The second prong of California Penal Code Section 631(a) prohibits an unannounced third party from "read[ing]" or "attempt[ing] to read or to learn" the contents or meaning of a communication while it "is in transit or . . . is being sent from, or received at any place within [California]." Cal. Pen. Code § 631(a). California courts have construed Section 631 and CIPA as broadly prohibiting the interception of communications, including through recordings. The district court agreed Plaintiffs presented evidence showing that "TrustedForm software intercepts the contents of Plaintiffs' communications in real time and stores the recording on an ActiveProspect server that ActiveProspect employees can access[.]" 1-ER-11. Defendants also concede that ActiveProspect's session replay "produces the same visual result as a video file." Ans. at 9. By intercepting and making a recording revealing Plaintiffs' answers to medical and mental health questions for obtaining a life insurance quote, ActiveProspect at the very least attempted to learn the substance of Plaintiffs' communications, violating the second prong.

In requiring not only interception but also contemporaneous understanding of the communication while in transit, the district court departed from the plain language of the statute. Defendants' arguments in support of the district court's restrictive interpretation of Section 631(a) ignore the ordinary understanding of the word "attempt." A defendant can intercept the contents and violate Section 631(a)

without gaining a contemporaneous understanding of their substance precisely because the second prong prohibits both actual reading and attempts to read. Defendants admit ActiveProspect captured Plaintiffs' messages to facilitate reading the contents later. Ans. at 44. That is an "attempt to read or learn" because under California law, an "attempt" requires only a slight act, effort, or direct movement towards understanding Plaintiffs' communications.

A contemporaneous understanding requirement that permits recordings without a live listener is also inconsistent with the broader statutory context, the legislative history of CIPA, decades of California jurisprudence on the scope of wiretapping law, and the broad interpretations of Section 631 and CIPA the California Supreme Court has repeatedly adopted in furtherance of the California Legislature's goal of protecting privacy. This Court should reject it.

Defendants insist the Court can alternatively affirm because ActiveProspect is not a third-party eavesdropper at all, but a tool that should be treated as an extension of a party to the conversation. In rejecting this argument, the district court applied a "capability to use" test that comports with both the plain text of Section 631 and the reasoning of the California Supreme Court in its seminal decision *Ribas v. Clark*, 38 Cal. 3d 355 (1985), and has been widely adopted among district courts. The test Defendants propose, by contrast, is unworkable and contrary to *Ribas*. The district court properly found triable issues regarding ActiveProspect's status as an

eavesdropper because the evidence showed that it can use the data it intercepts for its own purposes and thus is more than a tool.

This Court should reverse the grant of summary judgment.

## ARGUMENT

### I. ActiveProspect Attempted to Read or to Learn the Contents of Plaintiffs' Communications by Intercepting Them.

#### A. Requiring Contemporaneous Understanding Ignores the Plain Text and the Meaning of "Attempt."

Defendants claim the district court correctly held that the second prong requires a "*contemporaneous effort* to understand" the substantive meaning of the message while it is transit. Ans. at 23 (emphasis added). Although there was evidence ActiveProspect intercepted Plaintiffs' communications while in transit, the district court concluded it was not enough because ActiveProspect did not "interpret the substantive meaning of communications while they were in transit." 1-ER-12. In other words, the district court required Plaintiffs to show more than just an effort to understand, but a *contemporaneous understanding* of the communications while in transit. This ignores the plain text of Section 631(a).

The parties agree that courts must begin by examining the statute's text. Ans. at 23. Defendants' analysis is flawed from the start by focusing on the ordinary understanding of the words "read" and "learn" while ignoring that Section 631(a)'s second prong also prohibits *attempts* at reading or learning. Ans. at 23-31. Courts

cannot disregard the Legislature's "prerogative" to prohibit completed and attempted crimes. *People v. Moses*, 10 Cal. 5th 893, 911 (2020).

Defendants only briefly touch on "attempt." First, they argue that Section 631(a) does not prohibit reading or attempting to read a message *after* it is received. Ans. at 43-44. ActiveProspect's attempt at reading or learning—and therefore the violation—occurred when it intercepted the contents of the communication while they were in transit or as they were being sent or received so it could read them later. Opening Brief ("Br.") at 54-55. This is different from *Boulton v. Community.com, Inc.*, where the plaintiff's text messages were not intercepted at all, but had instead been accessed while in electronic storage after being sent to the defendant's own platform. 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025).

Second, Defendants argue that "attempt" is only meant to punish unsuccessful efforts to read communications, such as when an eavesdropper's equipment malfunctions. Ans. at 45-46. There is no reason to believe the California Legislature would bless reading a message so long as it occurs later, when the Legislature explicitly prohibited attempts at reading or learning, and the later reading of a message is just as injurious to privacy. ActiveProspect's conduct falls within the understanding of "attempt" since an attempt requires only "slight acts." *People v. Superior Ct. (Decker)*, 41 Cal. 4th 1, 8 (2007); *see United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1104-05 (9th Cir. 2009) (California's standard is

functionally equivalent to the substantial step standard under the common law). Mere preparation is not enough, but an attempt also need not be the last proximate step toward commission of a crime. *Decker*, 41 Cal. 4th at 8. It is sufficient that ActiveProspect's conduct is a "direct movement towards," *id.*, or an "appreciable fragment of the crime." *People v. Watkins*, 55 Cal. 4th 999, 1021 (2012) (citations omitted).

In capturing everything Plaintiffs did, ActiveProspect is "taking steps while a communication is in transit to facilitate reading that communication later[.]" Ans. at 44 (emphasis omitted). That is an "attempt" because ActiveProspect went far beyond preparing into capturing the entirety of Plaintiffs' communications, thereby depriving Plaintiffs of control over their information. *See* Br. at 25-26; *see also People v. Cain*, 10 Cal. 4th 1, 44 (1995) ("To attempt an act is to 'try' or 'endeavor to do or perform' the act.").

### B. None of the Statutory Canons Defendants Cite Support Their Narrow Reading of Section 631(a).

Under California law, consistent with federal wiretapping law, the contemporaneous interception of a message is prohibited, and a recording constitutes an interception. *See People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989); *People v. Otto,* 2 Cal. 4th 1088, 1098 (1992). Defendants' insistence on not just interception, but contemporaneous understanding, would give a free pass to recordings so long as there is not a live listener. None of the canons of statutory interpretation Defendants

invoke support introducing such a requirement.

Defendants argue that if interception alone is sufficient, it would render the portion of the second prong that prohibits reading or learning the "the contents or meaning of any message, report, or communication" surplusage. Ans. at 26. Setting aside that Defendants' preferred interpretation violates this canon by removing "attempts to read, or to learn" from the text, this is wrong. The reference to "contents" describes the type of information that a third party is prohibited from acquiring, but it does not suggest that substantive understanding must occur while in transit. Section 631(a) is like the rest of CIPA and requires only interception and not contemporaneous understanding of the contents because the second prong prohibits both actual reading and attempts at reading. The content requirement is met here because ActiveProspect captured the entirety of Plaintiffs' communications, including answers to questions about their medical history. Br. at 54.

Next, Defendants point out that Penal Code Sections 632.5, 632.6, and 632.7 explicitly prohibit recordings yet do not contain a "reads, or attempts to read" requirement. Ans. at 26-27. Defendants argue that the Legislature therefore imposed a "more exacting" standard under Section 631. *Id.* Any suggestion that Section 631 is narrower than other parts of CIPA directly conflicts with the California Supreme Court's recognition in *Ribas* that Section 631's "broad wording and purpose" likely reflects the Legislature's intent to make it a catchall to prevent efforts to circumvent

CIPA's protections. *See* 38 Cal. at 355, 360-61. Defendants themselves provide an illustration why "attempt to read" is broader than interception. If someone fails to capture communications in transit because their "technology malfunctions" then there would be an attempt even without the interception of content. Ans. at 46.

Defendants also argue that the second prong cannot be construed to prohibit recordings because courts generally presume that when a legislature uses different language in separate sections of a statute, it has different meanings in mind. Ans. at 27. Like any other canon, however, it is not absolute and must give way to legislative intent. *See Tellez v. Superior Ct.*, 56 Cal. App. 5th 439, 448 (2020); *Kirtsaeng v. John Wiley & Sons*, *Inc*., 568 U.S. 519, 540 (2013) ("We are not aware . . . of any canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing."); *People v. Superior Ct.*, 6 Cal. 5th 457, 467 (2018) ("Our interpretive task is not necessarily to slavishly assign a word precisely the same meaning every time it is used in a statute—regardless of the context . . .") (internal citations omitted).

Plaintiffs are not asking this Court to rewrite the statute based on unexpressed intent (Ans. at 53); only to give effect to the second prong's prohibition against "attempts" to read or learn consistent with the Legislature's expressed intent. Br. at 49-50. The "reads, or attempts to read" language originated during the time of telegraphs. While the California Legislature chose to retain this language in Section

631(a)'s second prong, the legislative history shows that lawmakers knew that the existing language already prohibited interception so there was no reason to change it. *Id*. at 47-50. The legislative history thus rebuts any presumption that the Legislature intended Section 631 to have a narrower meaning.

Defendants' contextual argument ignores that the California Legislature has explicitly recognized that Section 631 prohibits recordings elsewhere in CIPA. Penal Code Section 633.5 provides that "Sections 631, 632, 632.5, 632.6, and 632.7 do not prohibit one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission" of certain crimes. Section 633 similarly provides that "[n]othing in Section 631, 632, 632.5, 632.6, or 632.7" prohibits certain law enforcement officials "acting within the scope of his or her authority, from overhearing or recording any communication that they could lawfully overhear or record prior to January 1, 1968." These sections of CIPA confirm the Legislature's understanding that Section 631 prohibits recordings because otherwise "there would be no need for this exception[.]" *Forest E. Olson, Inc. v. Superior Ct.*, 63 Cal. App. 3d 188, 192 (1976). Defendants have no answer other than to dismiss the Legislature's words as "irrelevant[.]" Ans. at 47.

In the face of clear legislative intent and the Legislature's express recognition that Section 631 prohibits recordings, Defendants' reliance on the fact that Section

632 explicitly prohibits using a "recording device to eavesdrop upon or record the confidential communication" is unpersuasive. Ans. at 43-44. The California Supreme Court has adopted a broader interpretation of Section 632 based in part on language taken from Section 631, its "companion wiretapping provision," so there is no reason to believe it would read Section 631 more narrowly based on Section 632. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (2006).

Defendants point to a recent district court decision that read Section 631(a) narrowly to exclude recordings because it would otherwise render Section 632's explicit prohibition on recordings superfluous. Dkt. 36 (citing *Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025)). That court's analysis does not consider that while "the two sections envision and describe the use of similar or the same equipment to intercept communications, the manner in which such equipment is used is clearly distinguished, separate and mutually exclusive." *Ratekin*, 212 Cal. App. 3d at 1168. Section 631 is concerned with wiretapping through a connection to a transmission line, while Section 632 is concerned with "the interception of communications by the use of equipment which is not connected to any transmission line." *Id.*; *see People v. Guzman*, 11 Cal. App. 5th 184, 192 & n. 7 (2017) (reiterating distinction), *aff'd*, 8 Cal. 5th 673 (2019). This distinction also explains why *Ribas* noted that Section 631 is a catchall to prevent circumventing other parts of the Privacy Act, "e.g., by requesting a secretary to secretly transcribe

a conversation over an extension, rather than tape recording it in violation of section 632." 38 Cal. 3d at 361. In that scenario, the tape recorder is not connected to a transmission line.

According to Defendants, *Ratekin* recognized "the conduct prohibited by those statutes 'is clearly distinguished [and] separate.'" Ans. at 47 (quoting 212 Cal. App. 3d at 1168). The unaltered quote in the paragraph above shows the court was referring to the difference in the usage of equipment, not conduct. The *Guzman* court's analysis confirms this understanding as it discusses *Ratekin*, notes that Section 631 "closely resembles section 632," and similarly concludes that "[i]n all other substantive respects the conduct prohibited by the two statutes is the same." 11 Cal. App. 5th at 192-93 & n.7. Acknowledging the overlap between the two sections does not mean that they must be "read in lockstep" or that Section 632 is superfluous. Ans. at 47.[1]

Defendants' insistence that the second prong of Section 631(a) does not apply to recorded conversations because the Legislature used the word "record" in Section

[1] Defendants argue that Section 632 applies only to confidential communications and internet communications are presumptively not confidential. Ans. at 47 (citing *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746-47 (N.D. Cal. 2023)). *Swarts* acknowledged that online communications can be confidential, however. *Id.* at 747 (citing *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 799 (N.D. Cal. 2022)). Even if *Swarts*'s reading of California law is correct, it undermines *Eating Recovery Center*'s narrow reading of Section 631, because Section 632 would not become superfluous in the internet context.

632 but not Section 631 is also internally inconsistent. That argument would apply with equal force to Section 631(a)'s first prong because it also does not use the words "record" or "intercept." Yet Defendants do not dispute that the first prong applies to conversations intercepted only by a recording device. *See* Ans. at 49 (arguing *Otto* involved only the first prong).

### C. The Court Should Reject Defendants' Cramped Understanding of Privacy.

Defendants argue that a narrow interpretation is justified because "privacy rights . . . do not prohibit the mere collection and storage of data[.]" Ans. at 29 (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994)). Nothing in *Hill* supports such a conclusion. To the contrary, *Hill* acknowledged that "[t]he overbroad collection and retention of unnecessary personal information by government and business interests was one of the principal mischiefs" a 1972 amendment to the California constitution "was directed." 7 Cal. 4th at 17-18 (alterations, citation, emphasis omitted). Defendants' argument is also at odds with the recognition that a key aspect of privacy is the right to control dissemination. *Ribas*, 38 Cal.3d at 360-61; *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). That right is directly implicated here because ActiveProspect intercepts and collects answers to medical and mental health questions without consent.

Thus, far from "best align[ing] with Section's 631's purpose, legislative history, and public policy" as Defendants claim without meaningful support (Ans. at

29), adopting their cramped interpretation of "read, or attempts to read" would frustrate the goals of the California Legislature and run contrary to the California Supreme Court's broad interpretations of CIPA. *See Ribas*, 38 Cal.3d at 362 n.4; *Smith v. LoanMe, Inc*., 11 Cal. 5th 183, 199-200 (2021); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 769 (2002); *Kearney*, 39 Cal. 4th at 119.

### D. The District Court's Interpretation Conflicts with California Courts' Understanding of CIPA.

No California court has held that Section 631(a) or any other provision of CIPA requires a defendant "to independently interpret the substantive meaning of communications while they were in transit." 1-ER-12; *see* Br. at 23-32.

Defendants downplay the decisions of California courts, saying they did not concern Section 631(a)'s second prong. This is incorrect. For instance, in *People v. Conklin*, the California Supreme Court noted that the defendant was charged with violating Section 631(a), including under the second prong. 12 Cal. 3d 259, 262 n.1 (1974). The *Conklin* court reversed the judgment of dismissal of the criminal complaint and directed the trial court to overrule the demurrer after finding "no intent by Congress to occupy the entire field involving the interception of communications[.]" *Id.* at 273. Requiring contemporaneous understanding is also fundamentally irreconcilable with the California Supreme Court's statement in *Ribas* that viewing Section 631 as being "merely concerned with wiretaps, electronic amplifying and recording devices . . . is erroneous[.]" 38 Cal. 3d at 360.

Against the weight of this authority, Defendants muster only a single case. Ans. at 50-51 (citing *People v. Suite*, 101 Cal. App. 3d 680 (1980)). *Suite* does say that "section 632 goes beyond the scope of section 631 by prohibiting not only eavesdropping, but also recordation of a confidential communication." *Id.* But recording the phone calls there unambiguously did not violate Section 631 because they were recorded *by a party* to the call—the police. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (1975) ("a recording made by a participant does not intercept the message while it is in transit"). Unlike Section 631, even a party to a confidential conversation cannot record under Section 632 without consent. *See, e.g., Warden v. Kahn*, 99 Cal.App.3d 805, 814 (1979). In this respect, *Suite* is correct that Section 632 goes beyond the scope of Section 631, but *Suite* never considered whether a third-party recording would violate Section 631.[2] Where the *Suite* court did actually analyze Section 631, it noted that "the prohibitions of section 631, subdivision (a) have been applied to prevent wiretapping or other similar *interception* of the content of telephone conversations." *Id*. (emphasis added).

[2] *Suite* cites a different case but left out a key portion of the other court's discussion of the two sections: "albeit by way of dictum, section 632 goes beyond the scope of section 631 by prohibiting not only eavesdropping, but also recordation *by a party to the conversation*." *Forest*, 63 Cal. App. 3d at 191 (emphasis added).

### E. Federal Courts Have Not Required Contemporaneous Understanding.

Defendants rely on a series of federal decisions (Ans. at 27-29), but federal courts cannot override the California Supreme Court's interpretations of CIPA. In any event, these decisions offer no assistance to Defendants because they either did not grapple with the "reads, or attempts to read" requirement or, unlike ActiveProspect here, involved defendants that took affirmative steps to prevent themselves from ever deciphering the substance of the intercepted communications.

In *Williams v. DDR Media*, *LLC*, the undisputed evidence showed that the contents of communications were not actually intercepted, because the data was "immediately hashed as soon as it is transmitted." 757 F. Supp. 3d 989, 993 (N.D. Cal. 2024). There was "no 'key' that can unlock the hash" or "to turn the hash code back into the data that originally went into the algorithm. In this way, it is more protective than encryption." *Id.* Similarly, in *Gutierrez v. Converse Inc. ("Gutierrez I")*, there was no dispute it was "virtually impossible" to learn the contents of the communications while in transit because the transmissions lacked "the context required to interpret such communications." 2024 WL 3511648, at *3, 7 (C.D. Cal. July 12, 2024). ActiveProspect never took similar steps to prevent itself from ever understanding the contents of intercepted messages and affirmatively configured its software to include the necessary context. *See* 3-ER-474–75 (Wolfe Dep. at 128:6-

129:20) (the intercepted content is not hashed); 3-ER-435–40 (Shafiq Rpt. at ¶ 112-21).

Defendants claim Plaintiffs' interpretation cannot be reconciled with the statement that it was not enough to show "that Salesforce *could* read messages sent through the Converse chat feature" in *Gutierrez v. Converse Inc. ("Gutierrez II")*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025). There, the plaintiffs could not offer more than speculation that the third party, Salesforce, had access to any customer chat data and transcripts, because those were locked behind "a password-protected customer dashboard." *Id.* at *3, 8. Here, there is no dispute that ActiveProspect intercepted and had access to Plaintiffs' entire sessions.[3] 1-ER-4; 3-ER-388 (certificate of Plaintiff Torres's session); 3-ER-541 (same for Plaintiff Hyman).

The same panel in *Gutierrez II* issued an unpublished decision involving session replay software. *See Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025). The court reversed the dismissal of the plaintiff's claim under Section 631(a)'s second prong and held that it was enough to state a violation based on the "real-time capture of the contents of [the plaintiff]'s

---

[3] Defendants also cite a third unpublished decision involving Section 631. *See Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025). That claim failed because the only defendant could not eavesdrop on its own conversation and, unlike here, the plaintiff did not allege that the defendant "violated section 631 by aiding another party in eavesdropping." *Id.*

communications on Defendants' website without her consent[.]" *Id.* The session replay technology in *Mikulsky* works similarly to TrustedForm, because it also captures all inputs and keystrokes to create a replay of a user's session. *See Mikulsky v. Bloomingdale's LLC*, 2024 WL 3091395, at *1 (S.D. Cal. May 14, 2024). The court could not have concluded that the plaintiff had adequately stated a claim if Section 631(a)'s second prong contains a real time understanding requirement.

Other cases Defendants cite are inapposite because they hold that businesses offering only tools to other businesses are not third parties for purposes of Section 631(a). *See, e.g.*, *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024). Those decisions say nothing about whether "read, or attempts to read" requires contemporaneous understanding.

### F. The Rule of Lenity Does Not Apply to Section 631.

Defendants argue the rule of lenity compels adopting their narrower interpretation because CIPA is penal. Ans. at 30-31. The requirements for applying the rule are not met here, however.

First, under California law, the rule of lenity "applies only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule." *People v. Manzo*, 53 Cal. 4th 880, 889 (2012) (quotation omitted). With Section 631(a), there is no "egregious

ambiguity" in what the legislature intended, nor is there similar uncertainty about whether the conduct here is covered by Section 631(a).

Second, there must be two reasonable interpretations standing "in relative equipoise[.]" *Id.* (citation omitted). Defendants' proposed construction is not reasonable because it ignores the plain text and ordinary meaning of the word "attempt."

Third, the rule is rooted in concerns about fair notice. *United States v. Metcalf*, 2025 WL 2699997, at *9 (9th Cir. Sept. 23, 2025). That purpose is inapposite here, because two years before Plaintiffs brought suit, the same Defendants were on notice that their conduct allegedly violated Section 631 from an earlier lawsuit based on the same conduct on a different website. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022).

Defendants argue that the California Court of Appeal applied the rule of lenity to Section 631(a) in *Warden*, 99 Cal. App. 3d at 809 n.3. Ans. at 31. But while the *Warden* court recognized there was some ambiguity in Section 631, it did not apply the rule of lenity to the second prong, stating "[t]he second clause clearly has no application to participant recording." *Id.* at 809 n.3. Nothing in *Warden* suggests that the second prong is egregiously ambiguous or that "read, or attempts to read" is equally susceptible to Defendants' interpretation.

*Eating Recovery Center* did apply the rule of lenity to Section 631(a), but it did so without addressing the requirements the California Supreme Court has outlined. 2025 WL 2971090, at *6. Like Defendants here, *Eating Recovery Center* also did not address *Smith*, where the California Supreme Court declined to apply the rule to Section 632.7, since "the legislative history, the purpose of the statute, general public policy concerns, and logic all favor the interpretation [it] adopt[ed] . . . . Of even more significance, so too does the statutory language." 11 Cal. 5th at 183.

*Smith*'s analysis applies with equal force here. The words "attempt," "read," and "learn" have established meanings, discussed above. The legislative intent is to prohibit unauthorized interceptions, including recordings. Defendants' interpretation would undermine public policy by allowing secret recordings and is also illogical because there is no reason the California Legislature would prohibit recordings throughout CIPA, but at the same time permit recordings under the second prong so long as the eavesdropper is not listening live. *See Smith*, 11 Cal. 5th at 198 (rejecting narrower interpretation that would leave "a substantial gap" between CIPA's protections); *Flanagan*, 27 Cal. 4th at 775 (adopting interpretation that gave "greater protection to privacy interests").

## II. Whether ActiveProspect Read or Attempted to Read or to Learn the Contents of Plaintiffs' Messages Turns on Disputed Facts.

The district court erred in adopting an unduly narrow interpretation of Section 631(a)'s second prong. Defendants insist that this Court should still affirm because there is no evidence that ActiveProspect read or attempted to read or learn the contents of Plaintiffs' communications while in transit. Ans. at 31-43. The bulk of Defendants' arguments—e.g., whether ActiveProspect can decipher "events" or user inputs *while in transit*—are only relevant to the "read" requirement. *Id.* at 32. Those arguments should be rejected for the reasons set forth in Plaintiffs' opening brief because the TrustedForm software "sense[s] the meaning of" Plaintiffs' data by compiling each keystroke into the full words they typed, examining what type of content is being provided, and identifying certain contact information to extract—all in real time as the messages are being intercepted. *Id.* at 24; *see* Br. at 57-59.

As to attempt, because comprehension does not have to occur while in transit, the only relevant issues are when the interception occurs, if the data constitutes contents, and if ActiveProspect is able to decipher the contents at all. Because the district court recognized that ActiveProspect intercepts everything Plaintiffs did on Prudential's website while in transit and that employees can and do view session replays, triable issues remain.

### A. ActiveProspect's Attempt to Read Occurred While Plaintiffs' Communications Were In Transit or Being Sent or Received.

Defendants argue that the attempt to read must occur during the "milliseconds" that it takes for each network transmission to arrive at ActiveProspect's servers, but this again ignores the statute's text. Ans. at 31-32. An attempt occurs if the communications are intercepted not only while they are "in transit" but also the end and the beginning, i.e., "while [communications are] being sent" and while being "received." Cal Pen. Code § 631(a). "Section 631's protections extend explicitly to the beginnings and ends of communications, so there is no reason to consider the first part of an electronic communication beyond the statute's reach." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *6 (N.D. Cal. Oct. 23, 2019); *see also Ribas*, 38 Cal.3d at 359.

For example, Plaintiff Torres's session on Prudential's life insurance website, as captured by ActiveProspect, lasted almost two minutes. 3-ER-388–89. During that whole time, her communications to Prudential were "being sent" from her device in California as she filled out each page of the webform. *Id.* Defendants do not dispute that ActiveProspect was intercepting each of her answers, keystroke by keystroke, as she typed responses and navigated through the webform. Ans. at 6. ActiveProspect even captured a timestamp for each key press on Prudential's webpage. 3-ER-390–92. Thus, whether this capture is construed as occurring while "in transit" or as it is

being sent from her device, or received by Prudential, the "attempts to read" requirement is met.

Defendants take issue with the analysis of Plaintiffs' expert, Dr. Shafiq, because the TrustedForm code is "client side" on Plaintiffs' browsers, but the software code that triggers the interception operates while communications are being sent.[4] Ans. at 36-37. Defendants characterize this as pre-transmission and outside CIPA's reach (*id*. at 37), but the relevant time frame includes while a message is being sent, i.e., when a visitor begins to fill out Prudential's webform. Dr. Shafiq explains that within that time, ActiveProspect captures and records the content and then encodes and redirects it to ActiveProspect's servers. 3-ER-437. ActiveProspect cannot capture the communications before they are "being sent," and Defendants' argument once again disregards the statutory language.

### B. ActiveProspect Can Decipher the Contents of Plaintiffs' Communications.

According to Defendants, the district court correctly held that TrustedForm collects data in a series of undeciphered events that are "impossible" to be understood while they are being transmitted. Ans. at 32. Again, because there is no

---

[4] If this Court rejects the district court's narrow interpretation of the second prong, there is no need to direct the district court to rule on the motion to exclude Dr. Shafiq as Defendants request (Ans. at 35 n.6) because it is undisputed that the content of Plaintiffs' communications were intercepted while in transit and that ActiveProspect is able to access the entire session. 1-ER-4.

contemporaneous understanding requirement, what matters for an "attempt" is that the entire contents of Plaintiffs' communications are captured and that ActiveProspect can make sense of it. As Dr. Shafiq explains, the content of Plaintiffs' online communications were captured "in the plain" while they were being sent. 3-ER-437. In other words, the information being sent by Plaintiffs—including their responses to questions about their medical and mental health—was captured by ActiveProspect in real time in plain text that is readily comprehensible. *Id*. This "being sent" portion of the interaction is well within the statute's reach, because Section 631(a) includes a broader time frame than just "in transit." *Revitch*, 2019 WL 5485330, at *6. Defendants' own expert agreed that ActiveProspect applies any encoding or encryption to the content only *after* each communication has been intercepted. 3-ER-515–18.

Defendants' arguments about hashing, encoding, and encryption do not make this case like *Williams* because ActiveProspect did not prevent itself from *ever* learning the contents of Plaintiffs' communications. Ans. at 36-38 (claiming the data is encoded while in transit). Defendants admit that unlike in *Williams*, "hashing," a purportedly irreversible cryptographic process "to render data unreadable," was not applied to Plaintiffs' communications. Ans. at 38. Instead, Defendants used only standard encoding and encryption, which, unlike hashing, is *easily* reversible and

automatically undone as part of ActiveProspect's process of receiving the intercepted data. 3-ER-426, 28-37.

Dr. Shafiq conducted forensic testing of the network transmissions that ActiveProspect's code sent and was able to translate that data out of its encoded format to show what ActiveProspect originally captured. *Id*. Defendants are simply incorrect that this translation out of the standard encoding language represents anything different than what ActiveProspect does. *See* Ans. at 36; 3-ER-438; 2-SER-232 (Shafiq Dep. at 76:6-12).

Defendants also argue that TrustedForm only intercepts "1's and 0's" that are not readable (Ans. at 32-34), but it is undisputed that ActiveProspect employees can review and comprehend session replays. 1-ER-8–9. There is no textual or other reason for applying a different standard depending on the format of the technology used. The California Supreme Court is clear that interception of communications by a "mechanical device" rather than a human still violates Section 631. *Ribas*, 38 Cal. 3d at 360-61. Even before computers and the internet, recording technologies captured words in a format that was not immediately decipherable to a person: a record player has a record with grooves scratched into the vinyl that can be amplified to play sounds when a needle passes over them, for example, and a physical tape recorder works by moving a tape across different "heads" while sounds are stored in wave-forms. *See United States v. Patrick*, 6 F. Supp. 2d 51, 54 (D. Mass. 1998). The

fact that equipment is needed to extract the substantive meaning from the raw format in which communications are captured would not have exempted an eavesdropper from liability when CIPA was enacted. Internet software should be no different.

## III. The District Court Correctly Concluded that ActiveProspect Is a Third-Party Eavesdropper.

Defendants also ask the Court to affirm on the alternative basis that ActiveProspect is "not a third-party eavesdropper" because "ActiveProspect merely facilitated Prudential's use of the TrustedForm tool." Ans. at 61. The evidence in the record creates a triable issue as to whether ActiveProspect's role in this case is that of an "unannounced second auditor," such as in *Ribas*, 38 Cal. 3d at 355, rather than a simple tool, such as the tape recorder in *Rogers*, 52 Cal. App. 3d at 894. The parties agreed below this was the dispositive question, 3-ER-570, and the district court correctly held that ActiveProspect's capability to independently use the TrustedForm data it intercepted makes it an unauthorized third party. 1-ER-8–10.

### A. The "Capability to Use" Test is Grounded in the Statutory Text.

The second prong of Section 631(a) imposes liability on a person who "reads, or attempts to read" communications while the third prong separately imposes liability on any person who "uses, or attempts to use . . . any information so obtained." Cal. Pen. Code § 631(a). As the district court noted, requiring Plaintiffs to establish that ActiveProspect used the data for some other purpose collapses the second prong into the "use" requirement of the third prong. Thus, a software

provider's "capability to use" the data it intercepts is sufficient to establish that it is a third party and not a tool. 1-ER6–8; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Many courts (though to be sure, not all) have agreed with this reasoning. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1185 (N.D. Cal. 2024) (noting "a growing number of district courts . . . have reached the same conclusion"); *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *5 (C.D. Cal. Dec. 16, 2024); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 954 (E.D. Cal. 2025).

Defendants overread the statutory text and ignore *Ribas* when they argue the "capability to use" standard is too restrictive and that *actual* use is required. According to Defendants, because "[a] violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)," those prongs are inevitably redundant. Ans. at 66. Redundancy is not inevitable because the second prong does not concern the "use" of the information but outlaws unauthorized eavesdropping. The third prong offers an *additional* basis for a plaintiff to seek recovery if there is a predicate violation of the second prong *or the first prong* of Section 631. Nor does the party exception turn on whether the eavesdropper intended to use the data when intercepting it. Ans. at 66. In *Ribas*, the "court did not consider the [eavesdropper's] intentions or the use to which they put the information they obtained." *Javier*, 649 F. Supp. 3d at 900.

Defendants propose a confusing "*for whom* the software actually functions" standard. Ans. at 64. This approach is inconsistent with *Ribas*, where the friend who listened in only did so for the benefit of the wife (a party to the call), to offer corroborating evidence of what was said on the call. 38 Cal. 3d at 358. This is the same service that ActiveProspect provides through its session replay software. *E.g.*, 3-ER-362 (Rafferty Dep. at 193:5-14). Defendants' alternative test would also allow anyone to evade liability by hiring an agent to conduct the surveillance for them, a result directly at odds with *Ribas*. 38 Cal. 3d at 361.

Defendants' test would not even clear ActiveProspect in this case. Because it sells the service of "independently verifying" the contents of online communications, 3-ER-498; 2-ER-82–83, TrustedForm functioned for ActiveProspect (to make money) just as much as it functioned for Prudential. For these reasons, the for-whose-benefit test has been rejected by other courts. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("Whether the third party's use was purely for Nationwide's benefit, rather than for its own benefit, is immaterial under the statute.").[5]

---

[5] ActiveProspect also argues that the capability to use test is an insufficient "proxy for sentience" where the eavesdropper is a corporation rather than a human, Ans. at 67, but, unlike Defendants' alternative proposal, the test is guided by the statutory language and the California Supreme Court's holding in *Ribas*.

Defendants suggest a contrary holding would mean no session-replay software provider will be able to offer technical support to its client. Ans. at 65. But all they need to do is obtain consent, which "is a regular occurrence and hardly particularly technologically impractical." *Javier*, 649 F. Supp. 3d at 900 (citations omitted); *Kearney*, 39 Cal. 4th at 124 (requiring consent of all parties "is a most reasonable requirement"). ActiveProspect's policies already require website owners to obtain such consent from website visitors, but it took no steps to enforce them. 3-ER-352–53.

### B. ActiveProspect is Capable of Using the Information it Intercepted.

The district court concluded there is a triable issue as to whether ActiveProspect has the capability to use the intercepted data because certain ActiveProspect employees can and do access TrustedForm Certificates and view all their contents. 1-ER-8–10. The court held that the user-submitted information displayed in the Certificates "qualifies as contents of a communication," and "the fact that superuser employees can access this sensitive information suggests that it could be used for a purpose other than collection and storage." *Id.* Based on this evidence, "there is a genuine dispute of material fact as to whether ActiveProspect functions as more than a mere tape recorder." *Id.*; *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (similar capability "extends beyond the ordinary function of a tape recorder").

The district court rejected Defendants' reliance on ActiveProspect's End User License Agreement, because an internal policy does not establish ActiveProspect was *unable* to use the data. 1-ER-9–10. The court also correctly recognized that ActiveProspect's Terms of Service for all products "explicitly reserves its right to use collected content and data that 'potentially includes personally identifiable information.'" *Id.* at n.2 (quoting Rafferty Dep. at 151:11-20). "[I]t would be illogical for [a company] to grant itself the conditional right in under its own terms of service to do something it is not capable of doing." *Ambriz v. Google, LLC*, 2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025). The ability to use data for its own business purposes means ActiveProspect's capabilities extend "beyond that of a mere tape recorder[.]" *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024); *Tate*, 762 F. Supp. 3d at 954 (similar).

Whether ActiveProspect stores the data in a way that makes the content usable is also disputed. Ans. at 70. Despite what Defendants claim, the evidence shows the data is maintained in decoded, plain text format that is accessible even outside the Certificate's session replay video. 3-ER-427–28 (Shafiq Rpt. ¶¶ 92-93); 3-ER-509–11 (Polish Dep. at 64:17-66:15) (Defendants' expert agrees data in relevant format can be searched, extracted, and aggregated). Defendants' claims about how difficult it is to access the intercepted data, Ans. at 68, is belied by evidence that ActiveProspect can easily query its database to identify specific Certificates and

access the Certificate URL, 3-ER-431 (Shafiq Rpt. ¶ 105); 3-ER-480–81 (Wolfe Dep. at 170:9-171:13); and ActiveProspect can quickly retrieve data from cold storage in bulk, 3-ER-429–30 (Shafiq Rpt. ¶¶ 98-102); 3-ER-488 (Wolfe Dep. at 222:3-17).

While the district court did not reach Plaintiffs' other arguments, they further support the existence of a triable issue. First, ActiveProspect is like the wife's friend in *Ribas*, because it uses the communications it intercepts to create session replays so its employees can testify about the contents of these communications. *See* 38 Cal. 3d at 358; *see also* 3-ER-354 (Rafferty Dep. at 144:18-25); 3-ER-377–79 (Williams Dep. at 155:16-157:20); 2-ER-126–45 (affidavits). ActiveProspect even touts its third-party status in promoting TrustedForm. *E.g.*, 3-ER-362 (Rafferty Dep. at 193:5-14); 3-ER-498 (ActiveProspect offers "authoritative evidence that is captured and stored by an independent third party"); 2-ER-99 (offers "unbiased, third-party documentation").

Second, ActiveProspect admits it can use the metadata it collects in the recordings for its own purposes. 3-ER-356–57 (Rafferty Dep. at 146:1-147:19). Defendants suggest this information is not contents, Ans. at 73, but at a minimum it reveals that a particular person sought a life insurance quote from Prudential.

### IV. Summary Judgment Should Also Be Reversed as to Prudential and Assurance.

Because the district court erred regarding ActiveProspect's liability, summary judgment for Prudential and Assurance should be reversed as well.

## CONCLUSION

The district court's grant of summary judgment should be reversed.

Date: November 19, 2025

Respectfully submitted,

*/s/ Nina R. Gliozzo*

Dena C. Sharp
dsharp@girardsharp.com
Simon S. Grille
sgrille@girardsharp.com
Trevor T. Tan
ttan@girardsharp.com
Nina R. Gliozzo
ngliozzo@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

*Counsel for Appellants-Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2025, I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system:

**APPELLANTS' REPLY BRIEF**

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Nina R. Gliozzo*
Nina R. Gliozzo

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-03203

I am the attorney or self-represented party.

**This brief contains** 6,951 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ______.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Nina R. Gliozzo **Date** 11/19/2025

*(use "s/[typed name]" to sign electronically-filed documents)*